WILLIAM C. BOILVIN *et al.,* Appellants, *v.* HENRY MOORE *et al.,* Appellees.

APPEAL FROM PEORIA.

Where goods are erroneously shipped to a fictitious person, and after remaining unclaimed, are sold by the warehousemen, the surplus proceeds, after paying charges, belong to the shipper.

THIS was an action of assumpsit. Declaration contained common counts. Plea, general issue. Cause tried before POWELL, Judge, without jury, and judgment for appellees, of $291.83.

*Edward B. Norton* testified, that he was clerk for plaintiffs, who were manufacturers of nails at Wheeling, Virginia, and that on the 29th March, 1855, plaintiffs shipped a lot of nails to John W. King, Peoria, by steamboat; the invoice was enclosed in a letter and sent by mail; with the invoice was a bill of lading and draft upon King for his acceptance at six months. John W. King nor any one else ever offered to pay for the nails. Plaintiffs again wrote King, demanding payment October 11th, 1855. They received no reply, and wrote to King again December 8th, 1855, all directed to John W. King, Peoria, Ill. No reply was ever received to any of these letters.

*Edward M. Norton* testified, that as agent of plaintiffs he personally sold the nails specified in order in Peoria, Illinois, to a man as I supposed, from the manner in which his name was

written, by the name of John W. King. I had no personal acquaintance with him. I took orders from all sorts of persons without personal acquaintance, confining myself to inquiries as to their ability to pay, and looking to the orders I receive for the name of the party and place of shipment. I presented the order to plaintiffs, who filled it and shipped to Peoria. The order was given February 1, 1855, delivered to plaintiffs February 14, 1855, and the nails were shipped March 29, 1855. The signature at bottom of order is in the handwriting of the party who gave the order; whether it is Hing, or Sting, or some other name, I cannot say. I know the party was a dealer in Peoria, and I took the order from himself personally at his own store. No payment for the nails was ever made.

The following facts were admitted: That plaintiffs sent an order upon defendants to M. McReynolds, for the nails, in spring of 1856, which order was not accepted. That no such person as John W. King has been known to *reside* in Peoria, either at date of the order or since. That the nails were never received by King, but were received by defendants, who were warehouse-men in Peoria, from the steamboat Tiber, in April, 1855, in store for the consignee, and charges paid by defendants at time of receiving them. That the nails remained in store until spring of 1856, when they were sold to pay charges—sold for $425, and charges on them, $133.17. That defendants had no authority from, or ever saw or knew, John W. King, but the nails were left with them by steamboat Tiber, together with bill of lading. That no persons except plaintiffs have ever demanded the nails or the proceeds thereof.

Manning & Merriman, for Appellants.

Bryan & Stone, for Appellees.

Breese, J. This is a very plain case, one in which the doctrine of stoppage in transitu, or of conditional sales, has nothing to do. All the facts show, that the nails were shipped to Peoria to a fictitious person—one having no existence there, and remained in the appellant's warehouse until they sold them, uncalled for by the party in whose name they were shipped or any other person by his authority. The agent mistook the signature to the order for the nails, and hence being sent to a fictitious address, the title never passed out of the vendors—the plaintiffs below. They had a perfect right to recover the balance of the proceeds of the sale after deducting the charges upon them. It would be iniquitous that the appellants should

have the proceeds, their claim for warehousing and other expenses being fully satisfied. The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*